WENIGE-EPPERSON, INC., Plaintiff-Appellee, *v.* JET LITE PRODUCTS, INC., Defendant-Appellant.

(No. 74-266; ▮▮▮▮▮▮▮▮

Fifth District—April 29, 1975.

John P. Geismann, of Highland, for appellant.

Nick D. Vasileff, of Madison, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Madison County, following a jury verdict for plaintiff-appellee in an action brought for commissions allegedly due plaintiff from the sale of certain products manufactured and assembled by defendant.

■■ Plaintiff-appellee filed a motion in this court to dismiss the appeal because of defendant-appellant's failure to comply with Supreme Court Rules 323 and 343. (Ill. Rev. Stat. 1973, ch. 110A, pars. 323, 343.) The motion was ordered taken with the case. We have decided to review the case on its merits, and the motion is therefore denied. We note, however, that significant, unexcused failure of compliance on the part of defendant-appellant with the Supreme Court Rules appears of record. We strongly disapprove of any noncompliance with the rules of procedure adopted to expedite the appellate process and will not hesitate to dismiss an appeal where appropriate.

Defendant moved in the trial court to dismiss plaintiffs cause of action on the basis that plaintiff, a foreign corporation, had not procured from the State of Illinois a certificate of authority to transact business within the State, as required by section 102 of the Business Corporation Act (Ill. Rev. Stat. 1973, ch. 32, par. 157.102), and that, pursuant to section 125 of the Business Corporation Act (Ill. Rev. Stat. 1973, ch. 32, par. 157.125), plaintiff should not be permitted to maintain a civil action in Illinois. The trial court denied the motion. Defendant raised this issue again in a motion for judgment notwithstanding the verdict, which also was denied.

The facts of the case indicate that plaintiff is a Missouri corporation

engaged in the business of general advertising. Defendant is an Illinois corporation engaged in manufacture and assemblage of various models of lighting elements. Defendant supplied plaintiff with price lists for lighting elements manufactured by defendant to be employed in attempted sales of defendant's products.

In May or June of 1969, plaintiff was contacted by telephone by Holiday Mobile Home Park of America, Inc., located in Granite City, Illinois, who expressed an interest in purchasing certain lighting elements. On July 7, 1969, defendant wrote to a director of plaintiff corporation specifying what commissions would be paid as a commission on the sale of defendant's products. A July 7, 1969, letter from defendant to plaintiff quoted prices for the particular lighting element which plaintiff was attempting to sell Holiday Mobile Home Park.

Subsequently, representatives of Holiday Mobile Home Park visited the office of plaintiff in Missouri, where plaintiff had the particular lighting element on display. Following approval of the lighting element by Holiday Mobile Home Park, an agreement was signed by Holiday Mobile Home Park and plaintiff for the delivery of lighting elements, the understanding being that the elements would be ordered by Holiday Mobile Home Park as needed.

Plaintiff initially received orders from Holiday Mobile Home Park, which were in turn submitted to the defendant. Subsequent orders from Holiday Mobile Home Park were received and filled by the defendant.

Plaintiff made several demands on the defendant for commissions allegedly due from the sale of the defendant's lighting elements to Holiday Mobile Home Park; no payments were made, and this action for recovery was instituted.

The determinative issue before us is whether the activities of the plaintiff, a Missouri corporation, constituted the transaction of business within Illinois, thereby requiring the plaintiff to obtain a certificate of authority from the State as a prerequisite to the institution of a civil action in Illinois.

Formulating a precise rule as to what does and what does not constitute "doing business" in Illinois has been difficult. The words "doing business" as used in statutes regulating foreign corporations refer only to the transaction of the ordinary business in which the corporation is engaged or for which the corporation was organized. (*Alpena Portland Cement Co. v. Jenkins & Reynolds Co.*, 244 Ill. 354, 91 N.E. 480 (1910).) The transactions involved in the present case clearly indicate that the plaintiff was engaged in its "ordinary" business of advertising.

■■ In further defining what constitutes transacting business in Illinois, courts have excluded occasional or isolated transactions. (*Emcee Corp.*

*v. George,* 293 Ill.App. 240, 12 N.E.2d 333 (1937).) In *Journal Co. v. F.A.L. Motor Co.,* 181 Ill.App. 530 (1913), a New York corporation was engaged in the business of publishing trade papers, managing trade shows, and general advertising. Its principal office was located in New York, where its contracts for advertising or show space were dated. The New York corporation employed traveling salesmen who reported to and received instructions from the principal office in New York. The suit arose over a contract executed by a traveling salesman in Illinois as an agent for the New York corporation. The court held that the New York corporation was not "doing business" in Illinois since the business of the New York corporation, except so far as it was done by traveling salesmen who sent their orders to New York, was transacted in New York. In the case at hand, the initial request for the services of plaintiff was made by a telephone call to the Missouri home office of plaintiff by Holiday Mobile Home Park. Discussions were held several times between plaintiff and Holiday Mobile Home Park over the telephone and several times at plaintiff's home office in St. Louis. There is no evidence that the sketches of the lighting elements prepared by plaintiff for Holiday Mobile Home Park were prepared anywhere but at the home office of the plaintiff. Also, the agreement between plaintiff and Holiday Mobile Home Park was signed in the St. Louis office.

The record does not disclose that the plaintiff had an Illinois office, employed persons within Illinois, or was involved in anything more than "isolated transactions" in Illinois. Those transactions were a meeting in Collinsville, Illinois, between Epperson of plaintiff corporation and three directors of Holiday Mobile Home Park, and the delivery by Epperson of a lighting element display to Holiday Mobile Home Park in Granite City, Illinois. But for these transactions, the record clearly indicates that the business of plaintiff was transacted in St. Louis, Missouri. We therefore reject the defendant's contention that the plaintiff could not institute this action in an Illinois court.

The Supreme Court of Illinois has recently cast grave doubt upon the applicability of sections 102 and 125 of the Business Corporation Act (Ill. Rev. Stat. 1973, ch. 32, pars. 157.102, 157.125). In *Charter Finance Co. v. Henderson,* 60 Ill.2d 323, 326 N.E.2d 372, the court noted, without deciding, that money loaned by Charter Finance Company, a Missouri corporation, to an Illinois resident may have been "contracts made for interstate commerce" which the Illinois courts "cannot refuse to enforce." (*Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 42 L.Ed.2d 195, 95 S.Ct. 260 (1974); *Textile Fabrics Corp. v. Roundtree,* 39 Ill.2d 122, 233 N.E.2d 376 (1968).) In the instant case, the agreement that commissions would be paid by the Illinois corporation to the Missouri corporation would

appear to fall within "contracts made for interstate commerce." Because of our decision that plaintiff-appellee was not transacting business within Illinois, we need not reach this question.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JONES, P. J., and EBERSPACHER, J., concur.