**WIRTH, LTD., Plaintiff,**

v.

**The SILVRETTA, her engines, tackle, boilers, machinery, apparel, and furniture, Cast Shipping, Ltd., Cast Ship Services, N.V., Oceana Shipping, Ceres Marine Terminals, Inc., Chicago and Northwestern Transportation Company, Consolidated Rail Corp., Illinois Central Gulf Railroad Company, and Regional Transportation Authority, Defendants.**

No. 82 C 6680.

United States District Court, N.D. Illinois, E.D.

Jan. 9, 1984.

Peter A. Quilici, Conklin & Adler, Ltd., Chicago, Ill., for plaintiff.

Bruce C. Spitzer, Marvin F. Metge, Gorham, Metge, Bowman & Hourigan, Chicago, Ill., for Consolidated Rail and Illinois Central Gulf.

John S. Bishof, Ronald N. Cuchna, Chicago, Ill., for Chicago & Northwestern.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Defendants Consolidated Rail Corporation ("Conrail"), Illinois Central Gulf Railroad Company ("ICG"), and Chicago and Northwestern Transportation Company ("CNW") have moved to dismiss the claims against them of plaintiff Wirth, Ltd. ("Wirth") under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. By way of background, plaintiff relates the following facts in its response to the motions.

In July 1981 Wirth contracted with the Regional Transportation Authority ("RTA") to provide the RTA with steel rails to be delivered to ICG's and CNW's rail welding plants in Centralia, Illinois and Tama, Iowa respectively. Wirth ordered the rails from a French manufacturer, and they were shipped from Belgium aboard the Silvretta in early October 1981. The rails arrived at Burns Harbor, Indiana in late October and were unloaded by defendant Ceres Marine Terminals, Inc. Ceres loaded the rails onto cars provided by Conrail. Conrail transferred them to CNW.and to ICG for delivery to their rail welding plants. No connecting carriers were involved. Subsequently, the RTA notified Wirth that the shipments had arrived in a damaged condition, and it rejected all of the Centralia shipment and part of the Tama shipment.

Wirth filed this action in October 1982. Its claims against Conrail, ICG, and CNW were based on 49 U.S.C. § 11707 (Supp. V 1981), which provides for the liability of common carriers for damage to property shipped under bills of lading. The railroads moved to dismiss on several grounds, including improper venue under the statute (commonly known as the Carmack Amendment). We dismissed the claims against the railroads on March 1, 1983 for improper venue. Wirth subsequently filed an action under the Carmack Amendment against Conrail, the initial carrier, in the United States District Court for the Northern District of Indiana. Some time thereafter, Wirth sought leave to amend the complaint here to file a breach of contract action against the RTA and common law negligence claims against the railroads. We granted that motion on August 24, 1983. These motions to dismiss followed.

Defendants raise several grounds in support of their motion to dismiss: 1) that the claims against the railroads are duplicative of the suit in the Northern District of Indiana; 2) that any common law claim against the railroads has been preempted by the Carmack Amendment; 3) that the Illinois courts would not entertain an action against a railroad in these circumstances and that under the rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Illinois law mandates dismissal of the claims here; 4) that Wirth has failed to allege compliance with a condition precedent to recovery; and 5) that Wirth cannot maintain an action here since it has not qualified to do business in Illinois.

■ As far as the last ground is concerned, we agree with plaintiff that defendants have failed to meet their burden of proof to show that Wirth is doing business in Illinois in violation of Ill.Rev.Stat. ch. 32, § 157.125 (1981), which forbids a company not authorized to do business in Illinois from maintaining an action in any court of the state. *See Charter Finance Co. v. Henderson,* 60 Ill.2d 323, 326 N.E.2d 372 (1975) (company transacting isolated business acts is not doing business in Illinois within meaning of statute); *Vernon Co. v. Trimble,* 23 Ill.App.3d 240, 318 N.E.2d 666 (1974) (burden is on defendant to show that foreign corporation is doing business in violation of statute).

The Seventh Circuit has not addressed the issue whether the Carmack Amendment preempts common law actions against railroads for damage to interstate shipments. Several other courts of appeal have addressed the issue, however, and have split as to its resolution. *See Fulton v. Chicago, Rock Island and Pacific R. Co.,* 481 F.2d 326 (8th Cir.), *cert. denied,* 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973) (common law action preempted); *Litvak Meat Co. v. Baker,* 446 F.2d 329 (10th Cir.1971) (common law action not preempted); *American Synthetic Rubber Corp. v. Louisville & Nashville R. Co.,* 422 F.2d 462 (6th Cir.1970) (common law action preempted); *Chicago & North Western Ry. Co. v. Davenport,* 205 F.2d 589 (5th Cir.1953), *cert. denied,* 346 U.S. 930, 74 S.Ct. 320, 98 L.Ed. 422 (1954) (common law action preempted). *See also, e.g., Season-All Industries, Inc. v. Merchant Shippers,* 451 F.Supp. 727 (W.D.Pa.1978) (common law action not preempted); *George R. Hall, Inc. v. Superior Trucking Co.,* 514 F.Supp. 581 (N.D.Ga.1981) (common law action preempted).

Under § 11707, a common carrier providing service subject to the jurisdiction of the Interstate Commerce Commission—e.g., interstate rail service, *see* 49 U.S.C. § 10501(a), (b) (Supp. V 1981)—is required to issue a receipt or bill of lading for property received for shipment. *Id.* § 11707(a)(1). However, under the same section the carrier's liability is not affected by its failure to issue a receipt or bill of lading. The carrier that issues the bill of lading is liable under the bill for loss or injury to the property caused by the receiving carrier, the delivering carrier, and any other carrier over whose line the property is transported. This is presumably the reason why Wirth has sued only Conrail in Indiana.

■ In *Adams Express Co. v. Croninger,* 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), the Supreme Court examined the question whether a limitation on liability contained in a bill of lading was valid. It was valid under the Interstate Commerce Act, but under state law the limit would have been invalid. The Court ruled that the validity of the limitation was governed by the Interstate Commerce Act, holding that the purpose of the Carmack Amendment was to bring contracts for interstate shipments under a uniform rule of law:

> That the legislation supersedes all the regulations and policies of a particular State upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the State upon the subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority the regulating power of the State ceased to exist.

*Id.* at 505–06, 33 S.Ct. at 151–52 (citations omitted). Though the Court spoke in *Croninger* of the validity of state restrictions on limitation of a carrier's liability, and not squarely on the subject of the continued existence of state common law remedies, we think that the case clearly implies that Congress has shown a purpose to occupy the field of regulating claims for damages to goods shipped interstate. We

therefore agree with those courts that have held that the Carmack Amendment preempts state common law remedies in the present situation.[1]

For this reason, counts 5 through 8 of Wirth's amended complaint are dismissed for failure to state a claim upon which relief may be granted. Since, as we noted in our March 1, 1983 opinion dismissing the Carmack Amendment claims for improper venue, the claims against the railroads are severable from plaintiff's remaining claims, we find that there is no just reason for delay and expressly direct the Clerk to enter a final judgment dismissing counts 5, 6, 7, and 8 of plaintiff's amended complaint. Fed.R.Civ.P. 54(b). As to the remaining claims the schedule is: discovery closed May 1, 1984, final pre-trial materials May 15, 1984; final pre-trial conference June 6, 1984, at 4:30 p.m. and trial June 13, 1984.

---

1. The existence of a statutory provision preserving common law remedies, 49 U.S.C. § 10103 (Supp. V 1981), does not affect our conclusion, as a nearly identical provision was contained in former 49 U.S.C. § 20(11) (1976) (the former citation for the Carmack Amendment), and was not thought by the Court in *Croninger* to affect its holding. *Croninger,* 226 U.S. at 507–08, 33 S.Ct. at 152–53.

In light of our disposition of the preemption argument, we need not address the other arguments raised in support of dismissal.